thank you your honor I'm Donald Kilmer and I'm representing the appellants in this matter may it please the court it is the uncontested it is uncontested that the ordinance in question in this case was designed and intended to chill the exercise of a fundamental right however when the ordinance was proposed and ratified and passed by the by the county the Second Amendment was a dead letter in the circuit that has changed Heller stood for the proposition that the Second Amendment is not a collective right and McDonald affirmed that it is a fundamental right fully applicable to state and local governments after more than 10 years of litigation this case comes down now to scrutiny issues relating to the First Amendment the Second Amendment and the Equal Protection Clause with regard to the Equal Protection Clause this is claimed by the appellants operates as somewhat of a safety net or an opportunity for the appellants to have a second bite of the apple because even if the court were to find that the First Amendment values here in this case and the Second Amendment values in this case were subject to something other than strict scrutiny the court still has to wrestle with the fact that the county treats different groups of people differently with regard to their fairgrounds i.e. the Scottish games allowed to have their their firearms and motion picture television theatrical productions the problem with this case your honor the problem with this ordinance is that the the county of Alameda has no compelling interest the ordinance was designed to ban gun shows there can't be a compelling interest in banning gun shows they dress the ordinance up as a public safety ordinance but that was a pretext it's true that in the abstract public safety can be a compelling government interest in this case the government has failed to identify a specific compelling government interest at least with respect to gun shows counsel does the county have a proprietary interest in gun shows the county has opened it to all commercial activities there are RV shows dog shows the Scottish games so once the county opens the fairgrounds to all commercial activity gun shows should be entitled to compete on a level playing field for their commercial activities as well in addition to that your honor the Supreme Court has found in some of the airport cases that if a statute or ordinance is overbroad it's not even necessary to engage in a public forum analysis even if we were to concede that the county has a compelling interest in public safety here they still have yet to identify what that compelling interest is and how it leads to any kind of narrowly tailored restriction with respect to gun shows for example public safety in the abstract could be used to justify cars that can't go over 5 miles an hour or in fact complete bans on guns such as the restrictions that were struck down in Heller and in McDonnell the findings in the ordinance do refer to a mass shooting that occurred at the fairgrounds on July 4th in 1998 Mr. Kilmer let me interrupt you for a minute to clarify for me what precisely what issue that you are addressing in terms of what the district court did the district court in this case did two things it granted summary judgment on your first amendment and your equal protection clause subsequently you attempted to file an amendment to the complaint adding a second amendment actually your honor it was reversed once we had gone back to the district court after a trip to the California Supreme Court and argument here an attempt was made to amend the complaint to include a second amendment clause of action and that was denied yes the court denied your motion to amend on futility grounds is that correct your honor and at that time it was probably an appropriate ruling because the law in the 9th circuit was such that the 9th circuit did not recognize a fine of $1,000 and also it defined it as a collective right and found that the plaintiffs had no standing so you're preserving your first amendment argument which you lost on the argument on equal protection which you've obviously been arguing right now and then of course we'll get to the second amendment issue that's correct your honor well is the second amendment issue before us since you just said that the district court probably was probably was correct in granting the motion yes your honor but the law of the circuit is that intervening change in the law would permit a court of appeal to take a fresh look at an issue that had been resolved in the district court and so what remedy would you ask us to do well one remedy would be your honor to simply dispose of the issues that are before the court and send the second amendment claim back to the district court since it was dismissed on a motion to amend however I haven't heard the county raise that as a request here they are proceeding as if we can adjudicate the second amendment claim as if it was a summary judgment motion so is it your position that we can go ahead and decide the merits of the second amendment complaint which was dismissed on futility grounds yes and you're not asking us to permit you to go back and look at the second amendment claim and file an amended second amendment complaint to set forth whatever is required by mcdonald correct your honor and the reason for that is it actually not that I want to take on the mantle of representing the county that the posture of the case makes it somewhat unfair to the county at this point in time once the right has been recognized as fundamental by the united states supreme court we get to basically say this infringes our right then it's up to the county to justify its ordinance which it has failed to do in this case it produced no evidence that gun shows are a primary source of crime or any community evil they haven't even done a secondary effects analysis such as in the adult bookstore cases to prove that somehow there is indirect consequences to gun shows in fact one of the amicus briefs that I found most enlightening in this case was the cal guns foundation brief that talks about the changes in the crime rate since 1999 even after the gun shows were banned even after there was an attrition of gun stores in alameda county the crime rate continued to rise now I'm not here arguing that correlation equals causation but that would be my argument if I was trying to refute their secondary effects analysis so while it's unfair to the county to have a second amendment adjudication or second amendment litigation I don't have a problem with the court deciding the issue so you think we can go ahead and look at things like is this a sensitive area of the fairgrounds without your having an opportunity to address that issue well your honor the interesting thing is we get into shifting burdens here and in a constitutional rights analysis it would be the county's decision to have a sensitive place and they have failed to do so now not perhaps based on any incompetence but because the sensitive places doctrine was first raised in heller and the statute has not been amended and they have failed to define sensitive places what the county has engaged in recently is some post hoc damage control to try and bootstrap a sensitive places definition onto the fairgrounds but the county has conceded that carrying firearms onto the fairgrounds for the scottish games is okay carrying firearms by licensed persons with concealed carry permits is okay so they are not even addressing carrying counsel don't you have the burden of establishing that the ordinance burdens the second amendment right of your clients I do your honor well can you do that on the basis of the record yes your honor the second amendment protects a core right as set forth in heller for self defense but we maintain that a core right of the second amendment includes the right to acquire firearms and engage in commerce to acquire firearms much as the first amendment protects the core right of acquiring books as well as the right to read or to print books and to speak so while it may not be specifically set forth in the second amendment it is a core right when we take a look at first amendment analysis to acquire firearms and to meet and engage in commerce yeah but you're still stuck are you not with the level of scrutiny you're probably going to argue strict scrutiny but the mazzarella case out of the third circuit suggested that intermediate scrutiny was sufficient and on the basis of that hell that the crime of possessing guns with the serial numbers removed does not interfere with the core right yes your honor in the mazzarella case dealing with serial numbers removed from a gun did not address a complete ban on firearms per se which is what this ordinance is about well it's not a ban on firearms is it it's a ban on firearms on county owned property all right is it specifically with respect to the fairgrounds only or with respect to any building or any property that the county owns well i believe the county's position is that it deals with all county owned property with the exception of any residential property that the county apparently that's their interpretation the the first amendment analog to the second amendment which is what heller and mcdonald encouraged us to follow and the mazzarella case as well is that blanket bans on the possession of firearms have to be looked at with with some kind of strict scrutiny in this case we have the county specifically setting out to ban gun shows even though the word gun show does not appear anywhere in the ordinance the county cannot justify its ordinance based on any kind of compelling interest or any kind of evidence that the county has in this case and this wouldn't be before you ten years after being filed if there had been a comma and the word gun show in the exceptions and remember that the county amended its ordinance after we filed this lawsuit after we said hey you left us out and after we sent several letters to county council asking how did your ordinance affect our gun shows we'd like to know do we qualify for an exception those letters were ignored the county says that they gave you an opportunity to show how you would comply with the ordinance as written and they say that you ignored that opportunity actually the county didn't your honor fairgrounds management did however the fairgrounds manager did that after receiving a letter from county council and this is set forth in our joint statement of undisputed facts where county council interpreted the ordinance as gun shows could take place as long as no guns or ammunition were present the other another part of our joint statement of undisputed facts is that the fairgrounds manager did not ignore the facts I believe it was 88 89 or 90 says that county council is the authorized person for interpreting the ordinance we took them at face value and said we can't hold gunless gun shows and I see I have two minutes left I'd like to reserve my time you may do so county we'll hear from the county thank you your honor Sarah Weaver Richards Watson and Gershon on behalf of the county of Alameda I just want to begin by saying that it certainly is contested as to the reason for enactment of the ordinance this court as this court knows it can't look beyond the findings to try to discern whether or not there was some kind of other motive involved in in the enactment of the ordinance I also just want to point out the findings include the statement by the commissioner that was critical of the use of the county property for gun shows no the findings did not include that statement and the this court has cited to a number of cases in which the Supreme Court has pointed out that we don't look at statements of particular legislators in order to discern the reason for the ordinance you look at the face of the ordinance so it certainly is the face of the ordinance is what tells us the reasons why the county adopted this ordinance those findings include a mass shooting on the fairgrounds those findings include general statistics regarding firearms injuries and deaths in Alameda County and so on and so forth I also just want to point out that although the county might want to go back to the trial court and and really it's the county that's you know got to say whether or not we go back to the trial court they've said in their papers in several briefs that they do not take the position that they want to go back to the trial court that they want this case decided on the record that's here before the court and the court has at least five volumes of a record in the course of these proceedings we've included numerous citations to that record regarding the facts that we believe this court can use to sustain the validity of the ordinance and this court can affirm the trial court's denial of the motion for leave to amend on any ground that's shown in the record so that even though the trial court may have decided that the appellant should not be allowed to amend because of the state of the law at that time if this court determines that they do not state a claim and that the record doesn't substantiate a second amendment claim then that denial of the motion for leave to amend can be affirmed by this court and that's the ecological rights foundation. But if we're not persuaded, then what? Well, of course. Well, if you're not persuaded, then on this record you make a different finding regarding their second amendment claim, but I'd first like to address all the reasons. No, what I'm trying to do is to follow up on Judge Alicon's inquiry here. If we were to reach the conclusion that in the light of Heller, in the light of McDonald, that there is a sufficient change in the law that the decision to deny leave to amend should be overturned, even though the appellants are not asking for a remand, could we or should we remand under those circumstances? Well, the only if the court finds that the record before it is insufficient to make the decisions that it needs to make regarding the second amendment challenge. There's nothing in the record that the district court considered the second amendment application to this case. Isn't that right? Because the court said it's futile because of the law of the circuit was the second amendment is not incorporated. The district court did not analyze a second amendment claim. So it didn't look at the complaint and the amendment as to the second amendment at all? No, that's correct. And does do we, are we required under McDonald, because this case is still pending, to determine whether the district court should have allowed the plaintiffs to go back and amend their complaint to comply with what McDonald said? Well, if another way to approach it is, even if this Court were to allow that, the record is substantially developed with respect to their second amendment claim. They have put forward their second amendment claim in all of these proceedings despite the third amended complaint contains numerous allegations regarding the reasons why they want to hold the gun show on the fairgrounds and includes their statements regarding the fact that guns on the gun show are not being used for self-defense and so forth. So it, the court can look at this as a question of judicial economy. If the record is already developed enough that it can make a decision regarding the second amendment claim based on the state of the law under McDonald and Heller, then there's no reason to send it back for that purpose. Was the record developed that the fairgrounds is a sensitive place and, therefore, guns should be manned there? Yes. The county's position is it certainly was. We didn't have the rubric of what is a sensitive place. But in terms of the sensitive places category, first of all, the Supreme Court has identified two very different locations, government buildings and schools. There are different things about those two locations that make them sensitive places. One way to look at that is to say the court is indicating that there's a legislative role in deciding what's a sensitive place. Just as the Heffron Court looked at the fairgrounds and determined, in essence, this is a sensitive place with respect to assertion of First Amendment rights because we have crowd control issues, because we have people who come here with the expectation that the governmental body is going to be protecting them while they're using the fairgrounds for its principal purpose. But there's no finding. Is there by the trial judge that this is or is not a sensitive place? Well, there's no finding by the trial judge on that point. But if there's sufficient evidence before this Court for the Court to buttress its other findings regarding the Second Amendment with a conclusion that the fairgrounds fit nicely within the category, then there is no reason to send it back to the trial judge. You're not saying that this Court can make findings of fact, are you? No, no. But the facts are undisputed on the record that the Court needs to make that finding. This Court previously analyzed and made its conclusions regarding the validity of this ordinance, having found that the Second Amendment protects a fundamental right. Having found that the Court then went on to analyze the ordinance with reference to the Second Amendment challenge, and the Court identified, separate and apart  three different tests under which it concluded that there was not a Second Amendment violation here. The first test that the Court used was the entitlement test. The Court looked at the issue of whether any more than a woman's entitled to obtain an abortion in a county-owned hospital for non-therapeutic reasons, the appellants have a right to compel the county to open up the fairgrounds whose principal purpose is the county fair and maintenance of that venue for the county fair. Do they have a right to compel the county to allow the use of that fairgrounds to facilitate gun sales, which is what they say they want to do? And under that test, the Court found no violation. Is facilitating gun sales protected by the Second Amendment? Facilitating gun sales isn't protected by the Second Amendment. Doesn't a person who has a right to have a gun in his home have a right to go someplace to buy the gun? Absolutely. And to have somebody sell it to him. Absolutely. But that isn't facilitating gun sales. There is a right to purchase a gun to possess for home self-defense. The county's ordinance, if in fact it precludes them from having gun sales take place as they want them to on the fairgrounds, then it means that they have to either purchase guns at other gun shows for self-defense or purchase them from any one of the 29 licensed dealers that are in Alameda County where they can do so. It is simply, there are alternative venues, lots of alternative venues for that purchase. It simply makes the exercise of that fundamental right less convenient. And in the context of the voting rights cases, the Supreme Court has made abundantly clear that an indirect burden on a fundamental right that simply makes it less convenient to exercise is not a violation unless it doesn't serve an important regulatory interest. The record certainly establishes that the county has an important regulatory interest in preserving the county fairgrounds for the purpose to which it's dedicated and to avoiding activities on the fairgrounds that increase risks of liability, risks of injury and death, which would chill people's willingness and desire to come to the fairgrounds to participate in the events that are offered there. So what troubles me with that argument is that you've carved out an exception for the carrying of guns and, for that matter, the firing of blanks in a show. No, there is no exception for carrying of guns or firing of blanks. Any event on the fairgrounds can take place in which there is possession of a gun by an authorized participant, provided the participant keeps the gun in his immediate possession, and when it's not in his immediate possession, it is secured. The ordinance prohibits ammunition. The exception says nothing about firing blanks. Yes, the historical reenactments that the Scottish Games hold, they do fire blanks. They keep the guns unloaded. They keep them in their possession. And when they're not in their possession, they're secured. That same exception is available to any person who wants to possess a firearm at an event in the gun show in compliance with its terms. It doesn't make any distinction between one type of event or another type of event. The appellants' But couldn't it be argued by the appellant that this is a discrimination against a certain use of guns without any particular rational basis? Well, the the It doesn't discriminate. They're not similarly situated groups. The Scottish Games hold their event in compliance with that exception. The gun shows say they can't or they don't want to. It doesn't serve their purposes. So those groups are not similarly situated. And in addition, the, for example, if we analyze this under a time, place and manner restriction, if we analyzed this ordinance and said, does it fail because it doesn't have an exception for gun shows per se, the answer would be no, because the county doesn't have to perfectly tailor, even in a fundamental rights First Amendment context, the the ordinance to to any specific type of activity, as long as the ordinance succeeds in addressing the harm that it's designed to address. Well, counsel, McDonald tells us not only is the Heller right preserved, it applies to the states, but it really emphasized the fact that the Second Amendment is a substantial, a fundamental right, suggesting, as we've seen in some of these other post-McDonald cases, strict scrutiny perhaps ought to be applied. Why shouldn't we apply strict scrutiny to this ordinance? The fundamental rights cases do not pronounce a rule that we use strict scrutiny in the context of all fundamental rights. Even when strict scrutiny is used, there are lots of variations on the form. Well, sure. There has to be a showing of some burden on the right. Isn't that correct? There has to be a showing of a direct burden on the right. And as I've tried to point out, here we have, at most, an indirect burden on the right to purchase a gun. It makes it less convenient. We only we have a situation in which strict scrutiny is not compatible with the court pointing out that there are several presumptively valid categories of regulation that survive Second Amendment. Well, what was going on in Mazzarella when they looked at it and concluded that intermediate scrutiny applies, but then concluded that even if they did apply strict scrutiny, it was all right? Well, and I'd say the same analysis holds here. The county has a compelling interest in fulfilling its statutory duty to maintain the fairgrounds for the primary purpose to which it's dedicated. It has a compelling purpose, a compelling duty to protect persons on the fairgrounds so they can safely enjoy that venue. There are a number of facts that are set forth in our brief where we identify the different places in the record that talk about the harm that was suffered in the incident that occurred at the shooting. There were 12 people injured on that July 4th incident. Eight gunshot victims. The youngest was age 8. There were two other victims under the age 18. A hundred and four. Was there any showing about victims as a result of a gun show? The no, but again, even in the context of fundamental rights, in the context of a valid time, place and manner regulation, the county is not required to show that its ordinance is tailored to meet the specific harm that appellants complain of. The ñ in addition, we have the declaration of the risk manager for the county. She declared ñ she attested to the number of liability claims that were made against the county, all of them alleging that the county failed to take sufficient measures to prevent dangerous weapons from entering the fairgrounds. Thank you, counsel. Your time has expired. Oh. We've allowed you to go over time a little bit. I'm sorry. But Judge Gellerkorn may have a question for you. Well, am I correct that under the county ordinances, no one can go on the fairgrounds who is armed unless they're in special categories like policemen and so forth? The ñ first of all, it's not a strict liability crime. The law in California has special rules regarding when something is a strict liability crime. A person who needs to go ñ possess a gun on the firearms for purposes of self-defense or justification defense can assert those defenses in connection with any kind of prosecution under the ordinance. The types of venues that are regulated by the ordinance are narrow. The streets are accepted from the ordinance entirely. The ordinance only regulates these open space venues where crowd control is an issue. I'm not sure I made my question clear. When you go on to a fairground under the ordinance, can you go on there armed with a weapon? You can if you have a concealed carry permit. Okay. Now, my second question is, at the gun show, if a person decides to purchase a gun, do they get delivery there on the fairgrounds? No. Not under State law. That has nothing to do with the ordinance. The gun shows, under all of the regulations taken altogether, persons coming to the gun show can bring in as many weapons as they wish as long as at the time they enter they are secured against firing. The dealers can also have as many weapons as they wish out available for sale. The county's ordinance requires that an authorized participant have a firearm in his immediate possession, and when it's not in his immediate possession that it's secured. That's the difference between what the State law provides. So the answer to my question, a person who wants to buy a gun at the gun show does not get delivery on the fairgrounds? Not under State law. I just want to make, if I'm permitted, one other point. This is an as-applied challenge. If the Court can decide this as-applied challenge, then under the controlling cases, it also has decided any facial challenge in effect. And the Court's required to decide the as-applied challenge if it would be, if it would take care of the facial challenge before turning to the facial challenge. Thank you, Counsel. Thank you. Mr. Kilmer, you have some reserve time. Thank you. An example of a narrowly tailored regulation would be what the county did in response to the mass shooting, and that was they installed metal detectors at the entrance to the fairgrounds for operation during the county fair. And that was to detect any unlawfully carried weapons. As Counsel pointed out, one of the exceptions to the ordinance is a concealed carry permit under California State law, under Penal Code Section 12050. Again, this reiterates that this isn't about sensitive places. For example, anybody with a concealed carry permit is not permitted to bring a gun into this courtroom because of the sensitive nature of courtrooms. Nor would, for instance, a prison or a jail, it would be a sensitive place that would prohibit the introduction of firearms onto that particular property. Interestingly enough, the county ordinance itself contains an exception, probably trying to avoid a preemption issue, with regard to Penal Code Section 171B, where specifically that penal code section, state penal code section, exempts government buildings from the broad ban on firearms in government buildings if the government building is hosting a gun show, such as at the fairgrounds at Alameda County. Now, gun shows or guns at gun shows are actually more strictly regulated than the guns at the Scottish Fair. The problem with the Alameda ordinance is that not only does it not define sensitive places, it doesn't define authorized participant. Would an authorized participant be a vendor at the show, the hosts of the show, Russell and Sally Nordyke, or anybody who buys a ticket to the show? This statute, this ordinance is overbroad and it is vague, and it offends the First Amendment, the Second Amendment, and the Equal Protection Clause of the Fourteenth Amendment. It should be struck down or the court should give the county the opportunity to perhaps add an exception to their ordinance for gun shows or strike the ordinance. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the Court will adjourn.
judges: Hearing Panel: Alarcon, O'scannlain, Gould